ELIHU NORTON v. SOLOMON DOWNER.

*Evidence.*

In an action upon a promissory note brought for the benefit of the payee, but in the name of a mere nominal plaintiff, the maker introduced in evidence a written contract between him and the payee in regard to a note, of which the one in suit was only a renewal, which contract was made at the time of the execution of the original note, by which it was agreed that the maker should not be obliged to pay the note, and sufficient was conceded in the case to show that the note in suit stood upon the same footing, in regard to the maker's liability upon it, as the original note; *Held*, that the plaintiff could not introduce parol evidence to show that the agreement between the parties, at the time of the execution of the original note, was such that it was the duty of the maker to pay it.

ASSUMPSIT on a promissory note dated February 1, 1855, for four thousand dollars, signed by the defendant, payable to Chester Baxter, or order, and by him indorsed to the plaintiff. Plea, the general issue, and trial by Jury, at the June Term, 1857, of the Orange County Court,—UNDERWOOD, J., presiding.

The plaintiff introduced in evidence the note declared on.

The defendant read in evidence the following written instrument, dated March 11, 1854:

"SHARON, March 11, 1854.

Whereas Solomon Downer has given this day a note to me for four thousand dollars, payable in four months, with usual grace; and whereas I have this day indorsed said note to Henry Hubbard, and said Hubbard has left in my hands the above described note and taken my receipt for the same; and whereas it is understood that the note aforesaid is not to be paid by said Downer, but the avails are to be applied on certain demands said Downer has against the estate of S. F. Belknap, a part of which claims belong to me; and whereas I have paid said Downer two thou-. sand dollars and have taken his two notes of one thousand dollars each: now if the avails of the four thousand dollar note are applied on the demands against Belknap's estate, as expected, then said Downer is to have said note of four thousand dollars given up to him, and also the two notes of one thousand dollars each said Downer has given me, and the other two thousand dollars now in my hands is to apply on my share of the demands

against said S. F. Belknap's estate. Said Henry Hubbard has paid me the amount of said Downer's note of four thousand dollars, and I have paid over one-half of the same to Downer and taken his two notes, as above stated; the other two thousand dollars is now in my hands, to be applied on my share of Downer's claims against S. F. Belknap's estate, as aforesaid.

(Signed)                    CHESTER BAXTER."

It appeared that Henry Hubbard and Solomon Downer were, on the 11th of March, 1854, joint administrators upon the estate of Sewell F. Belknap, and that Downer and Chester Baxter were then joint owners of claims to a large amount, which had been allowed by the commissioners upon said estate ; and that no dividend had at that time been declared upon said estate ; and that the note for four thousand dollars, mentioned in the agreement above recited, was not paid at maturity, but was surrendered by Hubbard and a new note taken in the same form and on the same time, and for the same purpose and intent; and that the second note, thus executed, was not paid at maturity, but was renewed, as the previous one had been ; and that this latter note was not paid at maturity, but was renewed, by the execution, on the first day of February, 1855, of the note now in suit; which was in the same form with the previous notes and executed for the same purpose and intent; that a dividend was declared in October, 1854, upon the estate of Belknap, and it then became certain that the four thousand dollars mentioned in the said several notes must be paid to Hubbard ; and that Hubbard procured four thousand dollars at the Bank of Royalton upon his own personal note, and deposited the note now in suit, at the time of its execution, with the bank, as collateral security for his own note; and that after this note had fallen due, Baxter paid it and received it from Hubbard, and afterwards caused this suit to be brought upon it, in the name of the present plaintiff, as a nominal party, but for the sole benefit of himself, and in respect to all these facts there was no question. And the testimony on the part of the plaintiff tended to prove, that at the time of the execution of the first note, Baxter was informed by Hubbard, that he should rely upon him, Baxter, to pay the amount, whenever it should become necessary to require payment.

The plaintiff offered to prove by parol, that, as between Baxter and Downer, it was Downer's duty to pay the four thousand dollar note executed March 11, 1854, and that he was the real principal in the debt, and that Baxter was a mere accommodation indorser for Downer's benefit; and to this end the plaintiff offered to prove, by parol evidence, that in 1852 (the defendant having purchased against the estate of Sewall F. Belknap a large amount of claims proved and being proved before the commissioners on said estate), that Baxter purchased of the defendant an undivided half of these claims so purchased by him, and paid the defendant one-half of what the defendant had paid for the same, and that Baxter and the defendant were to share in what dividend might be paid thereon, equally; that the estate progressing in settlement, Downer, prior to March, 1854, had collected moneys of said estate to the amount of about fourteen thousand dollars, then in his hands, so that, as was supposed, he had enough to safely pay over to Baxter four thousand dollars, as his share of the dividends on said claims so purchased, and that Hubbard, the administrator, had been advancing twenty-five per cent on the claims proved, in advance of a dividend not yet made by the probate court, subject to repayment if necessary, and that the administrator told them there would doubtless be funds to pay twelve and a half per cent more, in all, thirty-seven and a half per cent; that Baxter requested Downer to pay over to him the said four thousand dollars, and that thereupon Downer applied to Hubbard for four thousand dollars, for the purpose of paying the same to Baxter; that Hubbard was not willing to let Downer have the money, unless he could have the name of Baxter as security, and proposed to let him have it, if he would make a note running to Baxter, or order, for four thousand dollars, and be indorsed by Baxter; that Baxter consented to do so, and that on the 11th of March, 1854, at Sharon, a note was made, signed by Downer and payable to Baxter, or order, and indorsed by Baxter, for four thousand dollars, payable the 9th of June, following, and that, all three being together, the money was paid over by Hubbard to Baxter; that this money was raised by Downer to pay Baxter his share of anticipated dividends, but that Hubbard required the

note as matter of safety; the probate court not having ascertained and decreed the dividend to be paid on the claims against the estate; that this note was renewed three or four times, and the last renewal was the note in suit.

The plaintiff further offered to prove, that on the 23d day of March, 1855, Baxter and Downer made a settlement of the matters of the claims, in which Baxter was interested, and gave his note to Baxter for the balance then found due him, which he soon after paid; and that Downer always paid the interest on the notes given to Hubbard, except this last one.

To all which testimony the defendant objected, but the court admitted it, and the defendant excepted.

The defendant then gave evidence tending to show that the first four thousand dollar note was given to raise money on the joint account of Baxter and Downer, and that soon after Baxter received it it was divided between them, Baxter letting Downer have one thousand dollars of it at one time, and in a few days after one thousand dollars more, taking Downer's notes therefor instead of receipts, and that said notes were the same named in the instrument of March 11, 1854, before referred to. The defendant also gave evidence tending to show that he paid these two one thousand dollar notes to Baxter soon after, and paid him the cash therefor and took them up.

The plaintiff gave evidence tending to show that Downer applied to Baxter to borrow money, and that Baxter lent him two loans of one thousand dollars each, and took said two notes therefor, and that Downer never paid him in any other way than in the settlement of 23d of March, 1855, aforesaid, and that immediately after, and on Downer's giving Baxter his note for the balance then found, he delivered the two notes for one thousand dollars each up to Downer to be cancelled.

The defendant's evidence tended to show that Baxter paid half the interest on the Hubbard notes, and Downer the other half.

It appeared that Baxter paid the note in suit to Hubbard. It was conceded that this suit was brought in the plaintiff's name for Baxter's benefit.

It further appeared that Downer had in his hands money of

the estate, so that he paid over to Hubbard two thousand dollars over and above what he was entitled to hold, after the dividends were ascertained and paid on his claims.

The defendant insisted and requested the court to charge the jury, that the evidence proved that Baxter and Downer obtained the money of Hubbard, and gave the four thousand dollar note on their joint account, to be thereafter cancelled by application of dividends thereafter to be made by the probate court on said claims, in which Baxter and Downer were jointly interested, if dividends sufficient therefor should be declared, and that thereupon both Baxter and Downer stood in the character of principals on that note, and that the defendant was entitled to a verdict. The defendant requested the court, in their charge to the jury, to direct the attention of the jury to the written agreement of March 11, 1854, and to explain to them fully its construction and effect. The court did not do so, and refused to charge as requested, but told the jury that if they believed, from all the evidence, taking into the account said paper of March 11, 1854, and settlement of March 23d, 1855, that Downer and Baxter did so obtain said money of Hubbard, as claimed by the defendant, and that it was understood between them in that light, the plaintiff could not recover; but if, on the contrary, they believed that the money was raised by Downer to pay Baxter his share of moneys received by Downer to be applied on dividends to be made on the joint claims of Downer and Baxter against Belknap's estate, and it was understood by them that the note given was Downer's to pay to Hubbard, and that Baxter was but an accommodation indorser for him, and in the light and character of a surety only, and that the note was given in lieu of paying over the money by Downer to Baxter as and for his share, then the plaintiff was entitled to recover.

To the refusal of the court to charge as requested, and to the charge as given, and the admission of the parol evidence objected to, the defendant excepted. The jury returned a verdict for the plaintiff.

*P. T. Washburn,* for the defendant.

*D. C. Denison* and *Lucius B. Peck,* for the plaintiff.

POLAND, J. The meaning of the contract of March 11, 1854, with the explanations afforded by the facts which the exceptions state were conceded, does not seem to be at all doubtful, so as to make parol evidence necessary, or even admissible, to control it. It seems that Baxter and Downer were joint owners of certain demands against the estate of Belknap, upon which Hubbard was administrator. They had not received any dividends, but expected to receive at least twenty-five per cent, and hoped to receive still more, but the amount the estate would pay was doubtful.

Hubbard, the administrator, was willing to pay over the sum of four thousand dollars, but desired security for its repayment in case it should turn out that they were not entitled to a dividend to that extent, and for that purpose a note of four thousand dollars was executed, signed by Downer, made payable to Baxter, and by Baxter indorsed to Hubbard.

The contract of March 11, 1854, recites that it was made contemporaneously with this note, and that the note was given for the money so received from Hubbard; that the money had been divided between Baxter and Downer upon the demands against the estate of Belknap, and that Baxter had taken Downer's two notes of one thousand dollars each, for the half of the money he had received.

The written agreement further provides, that in case said four thousand dollars is retained to be applied on said demands against Belknap's estate (that is, if they are not obliged to pay the money back to Hubbard), then the four thousand dollar note signed by Downer, and also the two notes of one thousand dollars each, which Downer had given to Baxter for his half of the money, were to be surrendered to Downer. In short, if they were entitled to keep the money, all the notes which had been given were to be surrendered, the money was already divided, and the whole matter fully executed.

From this it is apparent that in case the money had to be repaid to Hubbard, in some way, it was to be repaid jointly. The contract does not in terms provide what is to be done with the notes in case the four thousand dollars has to be repaid to Hubbard, or by whom the four thousand dollar note shall be paid, but taking the whole agreement together, the intention of the parties is plain.

It is provided in terms in the contract, that the four thousand dollar note is " not to be paid by Downer ;" but it is said that this is contradictory and repugnant to the whole purpose and intent of the contract, and that it must be understood that the parties intended by this, that the note was not to be paid by Downer, if they were entitled to retain the money as dividends. But we think the parties must have intended that, as between Baxter and Downer, Downer was not to pay the note in any event. If they kept the money, this note and the two one thousand dollar notes were to be surrendered to him, and if they were called on to repay the money to Hubbard, then Baxter relied on the two one thousand dollar notes he had taken of Downer, to recall from Downer the half of the money he had received.

It is argued by the plaintiff, that although by the original agreement it was understood that this note was to be paid by Baxter, or Baxter and Downer jointly, it was competent for the parties, by a subsequent arrangement, to give the paper, *in fact*, the same legal character it bore upon its face, and to make Downer in fact the primary and principal debtor, and Baxter the mere indorser and surety for Downer, and thus enable him, in case he was compelled to pay the note, to maintain an action against Downer upon it. We are inclined to think that there is no substantial objection in law to giving this effect to such a subsequent arrangement between the parties, but the case does not appear by the exceptions to have been put upon any such ground at all, but wholly upon the original relation between Baxter and Downer as to this note, when the original note was given, nor does it appear that any evidence was given of any alteration of the relation of the parties by any subsequent agreement, unless it can be inferred from the items of the settlement of March 23, 1855. But it is impossible for us to say from those items, that such a change was thereby produced, and it was submitted to the jury as evidence only of the original agreement of the parties.

The plaintiff put his case upon the ground that Downer had received a large amount of moneys belonging to Belknap's estate, of which Baxter had not received his share, and that this four thousand dollars received of Hubbard was wholly for Baxter, and that it was understood that if the note executed for it had to

be paid at all, it was to be paid by Downer, and that Baxter indorsed the note merely as a surety or accommodation indorser for Downer, and that this money when received, was understood to be Baxter's money, and that he loaned two thousand dollars of it to Downer, for which Downer executed to him the two one thousand dollar notes. All this the plaintiff was allowed to prove by parol evidence against the objection of the defendant, and the charge of the court to the jury could apply with propriety only to the evidence to prove the relations of the parties upon the original note, for which the note in suit was substituted.

It seems manifest to us, that the court erred in admitting the parol evidence to show the contract upon which this note was given, when it was conceded that the contract was evidenced by a written instrument, and the parol proof received, we think, proved a relation or agreement totally different from that shown by the written agreement.

The judgment of the county court is therefore reversed, and a new trial granted.